IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 25, 2003

## STATE OF TENNESSEE v. THOMAS A. CARTER

**Direct Appeal from the Criminal Court for Campbell County**
**No. 10740      E. Shayne Sexton, Judge**

_____

**No. E2002-01554-CCA-R3-CD**
**July 11, 2003**
_____

A Campbell County Jury convicted the Defendant of theft of property valued over $10,000, evading arrest, reckless endangerment with a deadly weapon, and simple possession of marijuana. The trial court sentenced the Defendant to an effective sentence of eight years in the Tennessee Department of Correction. The Defendant now appeals, alleging (1) that insufficient evidence identifying the Defendant as the perpetrator of the felony offenses was presented at trial, and (2) that the trial court erred in its sentencing determinations. Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Julie A. Rice, Knoxville, Tennessee (on appeal); and Charles Herman, Jacksboro, Tennessee (at trial), for the appellant, Thomas A. Carter.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William Paul Phillips, District Attorney General; and Michael Ripley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

**A. Evidence Presented at Trial**

Boyd Reynolds, President of American Bedding Manufacturers, testified that he was driving a white Yukon XL 2001, titled to American Bedding Manufacturers, on the night of January 27, 2001, when he paid a visit to friends at Budget Host Motel in Sweetwater, Tennessee. Reynolds stated that after visiting with friends for about 20 minutes inside the motel, he realized that the

Yukon had been stolen. Reynolds testified that he reported the truck missing to the Sweetwater Police Department. He maintained that he did not give anyone permission to have the vehicle on that night. Reynolds read the Vehicle Identification Number (VIN) of the Yukon from his original purchase agreement: 3GKEC16T51G100875. Reynolds stated that he originally purchased the Yukon for $34,000. He described the condition of the Yukon when it was returned to him: "It had been wrecked, the front end had been crashed in . . . there was milkshakes all in the vehicle and a lot of clothing." Reynolds testified that even after repairs, the truck would not drive correctly, so he traded it in.

Trooper Mark Pack of the Tennessee Highway Patrol testified that on the evening of February 2, 2001, he was traveling northbound on I-75 in his squad car when he passed a white Yukon XL. Pack recalled that the white truck pulled up behind his squad car, tailgated him and flashed its bright fog lights at him. Pack testified that he moved aside to the right lane thinking that someone needed help, but the Yukon XL sped by on his left side. Pack testified that he was not able to see who was driving the truck or exactly how many passengers were inside, but he reported that it looked like three or four heads were inside the vehicle. Pack responded to the truck's erratic driving by engaging his blue lights and signaling to the driver of the truck to pull over.

Officer Pack explained how the recording device in his patrol car worked. According to his testimony, when the blue lights were engaged, a video camera built into the police car automatically began filming. Pack stated that a manually operated microphone on his person and a microphone in the backseat of the squad car provided audio for the footage.

Officer Pack testified, and the video corroborated, that the Yukon pulled over when Pack signaled for it to do so, but the truck sped away when Pack began to get out of his squad car. Pack estimated that the ensuing chase lasted three or four minutes and the vehicles involved traveled approximately six or eight miles. Pack testified that the chase ended when the truck crashed into a ditch. He remembered that a large white male exited the driver's side door of the truck and ran into the darkness. The video offered a glimpse of this man and revealed that he was wearing dark pants and a white shirt under a dark jacket.

Officer Pack stated that he encountered the Defendant's wife and two sons at the scene. He testified that after making the Defendant's wife and two sons lie face down on the road at gunpoint, he asked them who was driving the truck. He remembered the Defendant's wife and one son telling him that they did not know who was driving. The video portrays Officer Pack telling the Defendant's wife and two sons that he would "load every one of [them] up and take [them] to jail." Pack recounted that he accused the older son of being the driver. He stated that the Defendant's wife then made the statement, "[W]ell, my husband, Thomas Carter, was driving." Pack admitted that he did not know who was driving at that time, but he continued to suspect that one of the boys was driving.

Officer Pack testified that when backup arrived, he arranged a search for the driver because of the possibility that another vehicle would be stolen if the driver was not found. Pack stated that

Sergeant Lindsay brought the Defendant to the scene of the crash following the search. He testified that Lindsay handed him the Defendant's wallet, where he found a Tennessee driver's license bearing the name Thomas A. Carter. Pack stated that he took the wallet and the driver's license to the patrol car where the Defendant's wife was sitting and asked her if the license depicted her husband. Pack stated that the Defendant's wife confirmed that the man on the driver's license was her husband and that he was the one driving.

As to the condition of the Yukon XL, Pack testified, "the front end was crumpled up and it pushed most of the body panels and stuff and the doors were– had some dents in them and stuff." Pack read the VIN from the recovered Yukon: 3GKEC16T51G100875. He explained that the VIN number is unique to the vehicle that bears it.

The Defendant's wife, Modeana Carter, testified that she did not know the driver of the white truck. She specifically stated that her husband was not driving the truck while she and her sons were in it. Mrs. Carter testified that she met the stranger with the white truck at a shopping center parking lot where her husband told her to go. Mrs. Carter recalled that the man told her that he was picking her up for the Defendant because the Defendant had car trouble. Answering a question posed by a juror, Mrs. Carter testified that she got into the vehicle with a stranger and endangered her two sons because of "poor judgment" and because "they wanted to see their dad." She testified that she and the Defendant had been separated for almost four years and that she had not known where the Defendant was living for the past three years.

Mrs. Carter recounted the events of the police chase as being similar to the events described by Officer Pack. She stated that after being pulled over by an officer of the law, the driver of the truck sped away. Mrs. Carter testified that she told her sons to lie down in the backseat because she was afraid they might get shot. She stated that after the truck wrecked, she heard her sons telling her to get out of the car because "he's going to kill you." Mrs. Carter testified that she saw Officer Pack standing with his gun pointing at her and followed his orders to get out of the truck and crawl onto the road. She stated that she told Officer Pack that her husband was driving the truck so that the police would leave her sons alone and focus on the Defendant who was already in trouble with the law. Mrs. Carter denied knowing that the truck was stolen.

The Defendant's son, Marcus, corroborated his mother's story and testified that a man unknown to him picked them up at a shopping center parking lot to take them to see the Defendant. Marcus denied that his father was driving the truck.

Sergeant Scott Lindsay testified that he assisted Officer Pack on the night of February 2, 2001, in the investigation involving the Defendant. Lindsay stated that he aided Officer Pack by searching for a "large white male with a white t-shirt" who possibly fled the scene. According to Lindsay, he located the Defendant in about fifteen minutes at a Hampton Inn about half of a mile away from the crashed truck. Lindsay recounted his first interaction with the Defendant, "We were looking at him and he looked at our patrol car and then turned away and then quickly looked back at us and then quickly walked to the corner of the building." Lindsay stated that he began walking

toward the Defendant when the Defendant ran between rows of cars in the parking lot. Lindsay stated that he found the Defendant hiding behind some bushes. Lindsay testified that after getting the Defendant to approach with his hands up, the officers asked him to identify himself. According to Lindsay, the Defendant's answer was indiscernible because something was in his mouth. Lindsay identified the item in the Defendant's mouth as a bag of green plant material that appeared to be marijuana. He testified that he placed the bag of plant material in an evidence bag and, upon his return to the sheriff's department, placed it in a locked evidence locker. According to Lindsay, someone in the sheriff's department mailed the evidence to the Tennessee Bureau of Investigation Crime Lab the following day.

Carl Smith, a forensic scientist with the Tennessee Bureau of Investigation, identified the markings on the inner and outer bag containing the plant material as his laboratory number and markings. Smith indicated that he tested the plant material for THC, the active ingredient in marijuana, and received a positive result. Smith's report confirmed Sergeant Lindsay's suspicion that the plant material was marijuana.

## B. Sentencing Hearing

The presentence investigation report indicated that the Defendant's prior record consisted of six violent crimes, eight property offenses, three drug offenses, seven driving violations, and two attempts to evade arrest. The report also stated that the Defendant had not held a verifiable job since 1985, but that the Defendant claimed to have been a self-employed dump-truck operator until 1998. The report included admissions by the Defendant that he regularly smoked two or three marijuana cigarettes at a time on the weekends. The Defendant conceded that he was on probation at the time of the instant crimes.

Relying on the evidence at trial, the presentence report, and arguments at the sentencing hearing, the trial court found three enhancement factors and no mitigating factors. The court applied the following enhancement factors under Tennessee Code Annotated Section 40-35-114[1]: (8) the Defendant displayed a previous unwillingness to comply with conditions of a sentence involving release into society, (13)(C) the Defendant committed these crimes while on probation from the Blount County Criminal Court, and (16) the Defendant committed these crimes under circumstances in which the potential for bodily injury to a victim is great.

The court then imposed the following sentences: count one, five years incarceration in the Tennessee Department of Correction (TDOC); count two, three years in TDOC custody; count three, two years in TDOC custody; count four, eleven months and twenty-nine days at seventy-five percent, with the mandatory minimum fine of $250. The court found the three felony convictions to be

---

[1]At the time of the sentencing hearing, there were twenty-two statutory enhancement factors listed in Tennessee Code Annotated section 40-35-114. Subsequently, in Public Acts 2002, ch. 849, § 2, the legislature added a twenty-third enhancement factor, but listed it as enhancement factor (1) and renumbered previous factors (1) through (22) as (2) through (23). See Tenn. Code Ann. § 40-35-114 (Supp. 2002). In this opinion, we will refer to the enhancement factors of Tennessee Code Annotated section 40-35-114 as they existed at the time of the sentencing hearing.

Range I standard offenses. The court ordered that the five-year sentence for count one and the three-year sentence for count two be served consecutively. The court ordered that the remaining sentences be served concurrently, resulting in an effective sentence of eight years. The court found no basis in the record for alternative sentencing, noting that the Defendant engaged in dangerous behavior and seemed to lack remorse.

## II. Analysis

### A. Sufficiency of the Evidence

The Defendant contends that the State's evidence of identity was legally insufficient to support his felony convictions for theft over $10,000, evading arrest, and reckless endangerment with a deadly weapon. The Defendant does not dispute the sufficiency of the evidence as to any element of these felonies other than his identity as the offender. The Defendant claims that the State did not prove at trial that the Defendant was driving the Yukon on February 2, 2001, thus there is insufficient evidence to support the felony convictions.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. Identification of defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

In support of the Defendant's convictions, the State presented the testimony of two police officers, supplemented by video footage of the car chase and its aftermath. Sergeant Lindsay testified that police found the Defendant at a nearby hotel wearing clothing which matched the

description given by Officer Pack. The video depicted a man wearing similar clothing to the Defendant's running around the front of the truck and into the darkness. Sergeant Lindsay testified that the Defendant behaved suspiciously when he first spotted the police officers at the hotel, and he attempted to run away. Officer Pack testified that the Defendant's wife reluctantly told him that the Defendant was the driver of the Yukon. He also testified that she identified the Defendant's driver's license that night at the scene. From the State's evidence, the jury inferred that the Defendant was the driver of the Yukon and therefore the perpetrator of the aforementioned felonies. We conclude that the jury's verdicts were reasonable and well-supported by the evidence. The State presented sufficient evidence of identity to support the Defendant's convictions.

### B. Length of Sentence

Defendant contends that the sentencing court erred in sentencing him to an effective eight-year sentence in TDOC custody because it improperly applied enhancement factor (16), that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(16). The Defendant also contends that the sentencing court erred by not imposing some form of alternative sentencing for these convictions.

When a criminal defendant challenges the length, range, or manner of service of a sentence, the reviewing court must conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In the event that the record fails to show such consideration, the review of the sentence is purely de novo. State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then determines the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(a), (b), -103(5); State v. Williams, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995).

The presumptive sentence to be imposed by the trial court for a Class B, C, D or E felony is the minimum within the applicable range unless there are enhancement or mitigating factors present. Tenn. Code Ann. § 40-35-210(c). The presumptive sentence for a Class A felony is the midpoint of the sentencing range unless there are enhancement or mitigating factors present. Id. § 40-35-210(c). If there are enhancement or mitigating factors, the court must start at the presumptive sentence, enhance the sentence as appropriate for the enhancement factors, and then reduce the

sentence in the range as appropriate for the mitigating factors. Id. § 40-35-210(e). The weight to be given each factor is left to the discretion of the trial judge. Shelton, 854 S.W.2d at 123. However, the sentence must be adequately supported by the record and comply with the purposes and principles of the 1989 Sentencing Reform Act. State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

When imposing a sentence, the trial court must make specific findings of fact on the record supporting the sentence. Tenn. Code Ann. § 40-35-209(c). The record should also include any enhancement or mitigating factors applied by the trial court. Id. § 40-35-210(f). Thus, if the trial court wishes to enhance a sentence, the court must state its reasons on the record. The purpose of recording the court's reasoning is to guarantee the preparation of a proper record for appellate review. State v. Ervin, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). Because the record in this case indicates that the trial court adequately considered the enhancement and mitigating factors as well as the underlying facts, our review is de novo with a presumption of correctness.

Enhancement factors must be "appropriate for the offense" and "not themselves essential elements of the offense." Tenn. Code Ann. § 40-35-114.

> The obvious purpose of these limitations is to exclude enhancement factors which are not relevant to the offense and those based on facts which are used to prove the offense. Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence "even if we would have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). The defendant bears the burden of showing the impropriety of the sentence imposed. Ashby, 823 S.W.2d at 169.

The trial court applied enhancement factor (16) based on the proof presented at trial. The video introduced at trial showed a white Yukon weaving around other vehicles at speeds of up to 110 miles per hour on the highway. It also depicted the Yukon crossing to the wrong side of the double yellow line on a winding country road. Although the driver of the Yukon used a blinker to signal lane changes during the high-speed chase, the use of a blinker did not significantly decrease the potential for bodily injury to a victim and does not affect the application of enhancement factor (16). According to the testimony of Officer Pack and the Defendant's wife, the driver of the white Yukon ultimately lost control of the vehicle and crashed into a ditch. There were several passengers in the Yukon. Though no one was seriously hurt, the crash ending the high-speed chase is strong evidence of the potential for bodily injury which existed throughout the pursuit. Based on the overwhelming

evidence of dangerous driving presented at trial, we agree with the trial court in its finding that the evidence introduced at trial supported the application of enhancement factor (16).

## C. Alternative Sentencing

The Defendant also argues that the trial court erred in ordering incarceration and failed to consider alternative methods of sentencing such as residential in-patient treatment programs for drug abuse or a halfway house. The Criminal Sentencing Reform Act of 1989 states that a standard offender convicted of a Class C, D, or E felony is "presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, this presumption does not apply to "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation." Id. § 40-35-102(5). The statutory presumption favoring an alternative sentence may also be rebutted if the sentencing court finds that:

A. Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

B. Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses;

C. Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Id. § 40-35-103(1); State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Having studied the Defendant's history, the trial court ordered TDOC custody and rejected alternative methods of sentencing because the Defendant had engaged in dangerous behavior and displayed an apparent lack of remorse. The trial court noted that the record contained no evidence to support the Defendant's contention that rehabilitation would occur through sentencing less restrictive than incarceration. The Defendant, as a Range I, standard offender convicted of Class C, D, and E felonies, presumptively qualifies for alternative methods of sentencing under Tennessee Code Annotated 40-35-102(6). However, the Defendant has a long criminal record including violent offenses, theft offenses, and evading arrest. Less restrictive measures of punishment than confinement have recently been applied unsuccessfully to the Defendant. The Defendant was on probation when he committed the instant crimes. Therefore, the evidence in this case negates the Defendant's presumptive qualification and supports the trial court's finding that the Defendant does not merit alternative sentencing.

For the foregoing reasons, we AFFIRM the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE